Morning, your honors. I'm Dan Johnson, attorney for Robert Berry. We're on what I think is an interesting and important case. In this case, when you look at the factual background in the case, I think there's some things that I believe have been established that comparative bullet lead analysis has been discontinued by the FBI. I had kind of a problem seeing why it was important. Let's say that you prove that the expert was a phony. The mode of analysis she used was a phony. It was phony. The whole thing was discredited. She pleaded guilty to this false statement during a Daubert hearing in another district. Let's say the whole thing was out there. What difference would it have made in light of the other evidence? It looks like they really caught these fellows with mountains of evidence against them. Well, I think as far as my particular client, the evidence is pretty much circumstantial evidence. I don't believe there's any direct testimony of his involvement in this. I thought he was caught heavily armed in regard to the casing and attempted robbery of the U.S. Bank branch in Portland. I don't know that there was ever an attempt at robbery. There's evidence they were there, but they were on their way back. Yeah, I mean, with fragmentation grenades and automatic weapons to deliver a note that they were going to leave. I mean, yeah, I guess you could have that defense argument. I'm looking at evidence of the crimes that he's been charged and convicted of. But the jury had that evidence. I mean, I guess to follow up on Judge Kleinfeld's question, there's a lot of circumstantial evidence that, cumulatively viewed, is strongly supportive of guilt. And I'm having the same question. You know, what difference would it have made even if they didn't have the. . . The first jury was hung on these counts two through nine. But we have no idea what hung them, do we? Well, I don't think we ever do unless we inquire of the jurors. But that can come into play in the analysis, I would suggest. I mean, even if we look at the lead, you still have the 3 percent antimony. You have the white elephant pricing, which is identical. The packaging is the same. You've got the testimony from the munitions manufacturer as to how much of this black powder was sold in the Spokane, northern Idaho area. There's a lot of circumstantial evidence here. The question becomes, you know, what weight do you place on scientific evidence? FBI agent basically saying it's analytically indistinguishable. She's pretty much safe. No, I'm taking that out of the equation. I understand. So I think initially we need to decide and argue about, from our perspective, is what standard do you apply? There's several that might apply here. I'm limited by the lack of an evidentiary hearing on the Brady issues that I believe are here. Jurisdiction. I mean, we are now how many years past the trial date? And the rules say that if you're going to bring a motion, the equivalent of a motion for a new trial, which apparently is how the district court treated this, you've got to do it within three years. And the evidence is not evidence of actual innocence. The evidence is, at best, substantially impeaching. Well, I think it's evidence, newly discovered evidence of the government violating Brady and putting on evidence that they was a candidate. But our cases say, all that notwithstanding, you've got to bring it within three years if you're going to grant a new trial, unless it is evidence of actual innocence. And even charitably viewed, I'm having a hard time seeing that we've convicted a completely innocent man. Well, I believe that the actual innocence case law seems to imply that when there's no evidence of any constitutional violation, we're here on evidence that there's a constitutional violation at the trial level. Our position is that a Brady-type analysis should be used here and that there was a reasonable likelihood that this tainted evidence. When you say Brady-type analysis, what Brady material was withheld? Well, there was, in the Clemens case, there's mention about 1991 that the FBI was questioning their using this analysis technique. Again, that's something that would have been able to be developed more on an evidentiary hearing that was requested and denied. The idea then would be, you know, Agent Lundy. And you all understood she was convicted of false swearing several years after the trial, but it should have caused enough interest in the issue that an evidentiary hearing could have been ordered to develop that Brady situation. Because, again, I understand the court's position, but the first jury disagreed, and there was a hung jury. They didn't convict him. And so our position is that the analysis- But, counsel, maybe I'm not making my questions clear. As I understand it, on a 2255 petition, you have to show proof of actual innocence, not that there was potentially exculpatory or impeaching information that should have been available and presented at the trial, but proof of actual innocence. And in the strength of the other evidence- Well, Your Honor, I understand what you're saying, but I don't believe- Oh, so you understand my question. I do. Okay. I do, but I think the difference in what I would say distinguishes what your position is, is that we're arguing there's a constitutional error at the trial. We're not arguing that the trial itself was fine and we're bringing up new evidence now. And so the question then becomes, if you get to it and you apply the Brady analysis and the Brady standard, is there a reasonable likelihood that without this evidence, this scientific evidence, which I think is- First of all, you never made a Brady claim in your 2255 motion. Well, my client, as a pro se prisoner, raised the issue of alleged lies by Agent Lundy, and that once he discovered and heard about this in prison, he brought these issues up in his 2255. In January of 08, he tried to amend the petition using the language Brady, once he, as a layperson, understood. So the issue was out there. The judge would not allow that and denied that. Well, it was not raised. It was not alleged in the 2255 motion. And two, it wasn't even argued to the district court until the reply brief. Right? So, you know, you can't, you know, this is not a claim that was, you can say, you know, fairly presented to the district court, and the district court didn't rule on it. Well, my position is- You can't argue it here, can you? My position is it would be encompassed in the original 2255 because of the allegation is that there was, you know, this improper evidence used. I mean, the Brady idea of whether the government knew or didn't know about that, it's included in his memorandum. I mean, the issue is that- Let's say- It's a layperson, though. He didn't have a lawyer at the time, and so- Let's say that the three years is no bar, the limitations on 2255 are no bar, the government should have disclosed and failed to disclose that it was discredited mode of analysis and should have disclosed and failed to disclose that its expert witness had been convicted of a false statement under oath. Let's assume for purposes of discussion all those things. I still don't understand how you satisfy the second part of Brady if you get there, which is some probability, I can't remember the exact verbal formulation, that the outcome would have been different. You've got all that evidence that Judge Tallman talked about. You've got all these notes about the usury and usurers flee our land, which kind of sounds, when you put it in the context of the bombings, as though these people imagine they have a biblical justification for killing people who violate their view of the Bible. You've got the business with the son about hiding the gun. You've got the snitch who snitched him out in the first place from the Christian identity movement there, Sam Point, as I recall. I don't understand how you could have any likelihood of a different result, and you need that in order to get to first base, even if we assume all those other things in your favor. Well, my client's position is, and obviously in the time we have here I can't go through each and every element. I think in our brief we've addressed each of Judge Nielsen's points he made about the strength of the government's case. I'm sure you had a poopy response to precisely that implicit question in your final argument to the jury, and that you've thought about it a lot. So just tell me in a sentence or two why this guy would be innocent, but for the phony expert testimony. His version of it is he had alibis for the crimes. The evidence that was mentioned about letters and such goes more towards Mr. Merrill and not Mr. Berry. There's no evidence that any of these letters or items were on any computers of Mr. Berry's or anything else. A jury must not have bought his alibi, and a phony alibi will sink a defense, and the expert witness who says where the bullets came from becomes totally irrelevant with an alibi defense. Well, in any case where there's arguments on both sides in front of a jury, I mean, the question becomes here, do we let the jury decide on a case where a man got life without parole? I think you're still missing the concern that I have. How do you get around our language in Turner v. Calderon where we talk about freestanding innocence claims? But if you look, it's always couched in terms of freestanding innocent claims when there's no constitutional violation is the way the cases seem to read. So I don't believe it's a freestanding innocent case. It has to show actual innocence plus constitutional error. You want to focus on constitutional error, but it's a two-part test, and you only meet one prong. I mean, I don't see why this case is not controlled by Turner v. Calderon. Well, I think it's the question is a fundamentally unfair trial under Brecht and with the constitutional violations that are alleged. But you still haven't addressed actual innocence. That's what you've got to show. Well, you know, we've made our argument in our brief, and I understand. That's our position. Okay. I'd reserve three minutes. Thanks, Mr. Miller. Thank you, counsel. Thank you. Counsel. Please, the court. My name is Tom Rice. I'm an assistant United States attorney from the Eastern District of Washington, and I tried this case to the jury several times. The government's first point is that we applied the first jurisdictional or the test here inappropriately for a new trial, the five-part test set forth in Jackson and Krasny. We believe that, as articulated before this court, the defense raises more akin to an actual innocence claim covered by Herrera v. Collins, and therefore this court doesn't have jurisdiction of this claim. Counsel has raised new Brady claims, the Brady claim in his reply brief. But then he, throughout his briefs, argues that he amended his 2255 motion and raised all these Brady issues. But if you go back through the chronology, his, quote, So all these, quote, Brady claims with which he hinges his constitutional violation were raised after the district court's decision. And so we don't really have a constitutional violation here properly alleged. Kathleen Lundy's perjury conviction occurred four and a half years later. Was it perjury? I had thought it was just misdemeanor false statement. I believe it was called a false swearing in Kentucky, and it was a misdemeanor. I would imagine that felony perjury requires willfulness and misdemeanor false statement doesn't, but I don't know. Do you know? I don't know the answer to that either. But you are correct. She did plead guilty to a misdemeanor false swearing. That occurred four and a half years later. But for impeachment purposes, would it make any difference? I mean, I assume you could impeach her on the misdemeanor because it goes to veracity. Yes, I believe if that had happened before the trial, it certainly would have been a misdemeanor. If it had happened before the Spokane trial. Right. But I think with all the witnesses, the over 100 witnesses that the government called here, if somebody lied on their taxes or something else five years after the fact, it does not entitle this defendant to a new trial just because somebody subsequently commits false swearing. The interesting aspect of all this is the FBI did discontinue the lead bullet analysis unit. And it's based on this book by the National Research Council. And I believe that that has been grossly miscited by counsel in his brief. There were three things that the National Research Council looked at. Those three things were the analytical method, the statistics for comparison, and the interpretation issues. And in this case, the analytical method, the counsel indicates that the analytical method is sound science. And the seven elements of metal that they were analyzing was the appropriate level of analytical analysis necessary for this type of analysis. The analysis, the look at the lead bullet from the crime scene and the lead pellets from Mr. Berry's shop are not in question here. The science is good. The second aspect is the statistics for comparison. Kathy Lundy did not testify to any statistical analysis for comparison. She didn't say, well, it's one in a million or one in a billion chance that Mr. Berry would have these in his shop. As compared to the universe. No statistics were introduced in that regard. Is your argument by metaphor to DNA that the probabilities are 15 billion to one that it was somebody else? Right. And there was no testimony as to that type of analysis in this case. The other, the interpretation issue, and that's the only thing, or the thing that's been grossly criticized here is the interpretation. And that's grossly criticized by the National Research Council for the FBI not having adequate controls of that aspect of their testimony. And that's the law review journals and everybody else, the hypothetical criticisms that are leveled against this type of analysis. We don't have that in this case because we have Kathy Lundy's testimony and combined with Gregory Hansen's testimony. We're dealing with a very small company called Hornaday. Hornaday is only one of three manufacturers of lead bullets or lead, excuse me, lead shot. And that's a distinction that's also made in here is lead shot and lead bullets are obviously different vehicles. But Winchester and Remington produces these by the boatload of bullets for guns. But there's a very small market for lead pellets and especially number three lead pellets. The defendant himself testified that he bought his pellets at White Elephant and those pellets that were seized from his shop were two full five-pound bags of Hornaday lead shot. So we have the identity there. We also have Gregory Hansen testifying that only 436 bags of lead shot were manufactured at this point in time. And of that, and this was all provided to the defense during the trial, all the elemental analysis records, all the shipping records, everything, 32 of those bags were shipped to the greater Spokane area, Spokane, Washington, and Coeur d'Alene, Idaho. And she was pressed on cross-examination. What does that mean by the defense? What does that mean? Are you telling me that Barry's lead shot was used on the Planned Parenthood bombing? And she said, no, I am not telling you that. She also conceded that there could be a coincidental analysis that still matched the lead shot that she tested. So she did not suffer from any of the criticism leveled against the FBI by the National Research Council because her testimony was combined with the actual manufacturer's testimony. And this manufacturer, Hornaday, manufactures such small batches of lead shot. There were only 432 bags or 436 bags of five-pound number three lead shot manufactured at that time. It's the government's contention that under no standard or review for this type of case, would the defendant be able to meet his burden of showing the adequate prejudice under the Constitution for a new trial. Am I correct when Mr. was it Hanson? Hanson. When he testified, he established that the lead was actually a mixture of a Sarko and somebody else's lead, but that Hornaday added or maybe a Sarko used this 3% antimony, which nobody else used in their lead. Right. And then counsel quoted a part of his answer in a transcript. Are you aware of anybody else that uses 3% antimony in the lead? He said, no, I'm not aware. Of course, that begs the question, well, are there or aren't there? But if you follow the transcript, he says only Federal and only Winchester make lead pellets, and they use new lead. I believe the antimony comes in for recycled lead from batteries. So without regard to the reliability of the CABL analysis, this is all circumstantial evidence linking the lead found in Mr. Berry's shop to Hornaday? No, it isn't, and I need to correct that. The lead shot found in Mr. Berry's shop were two full five-pound bags of labeled Hornaday lead shot. He had Hornaday lead shot, and there were no empty bags there. So we know that to be Hornaday, and it was 3% antimony and everything. Now, the Planned Parenthood, we have 3% antimony, number three lead shot, and the scientist testified that, in her opinion, it was from Hornaday. That's it. But we don't know anybody else who used 3% antimony is my question. We know based on their testimony that only two other manufacturers exist, and they do not use 3% antimony. Okay, so I think we're saying the same thing. So the question here is, even without regard to the reliability of the CABL protocols, the jury still had before it evidence of circumstantial linkage that would tie the lead found from the exploded bomb at Planned Parenthood as being similar to the lead that was found in Mr. Berry's shop. Yeah, exactly. That's exactly right. In going through this testimony, as you have the last few minutes, are you addressing, you know, the adequacy of the evidence in terms of a Rule 33 neutral motion or in terms of a constitutional violation or, you know, what? What is it? Are you saying, you know, it's not enough to warrant a new trial or it doesn't amount to a constitutional violation or what? What are you saying? It's the government's position that United States versus Jackson, the new trial test is wrongly decided. You didn't argue that in the district court. No, I did not. So you're like changing horses now. Do you think you can do that? I believe I can. I believe jurisdiction in this court needs to be analyzed before the court goes on it, irrespective of the district court's wrong. Are you saying we don't have jurisdiction? I'm saying that I absolutely have jurisdiction to decide the case. What are you saying, jurisdiction? I'm saying that the defense has not properly pled enough facts to give it jurisdiction to grant a habeas, a 2255 at this point in time. This was raised because counsel for the defense raised in its opening brief and said that we disagree with Jackson. We disagree that it's a new trial issue. We want to apply Harrington or some other test. I looked at that and I said, what's going on here? Why hasn't the Supreme Court defined when you can get into court after acquired evidence? And I came up with Herrera v. Collins. It says you can't unless you show your actual innocence. So I think because they contend that. Under 2255. Correct. I mean, if you go to court under 2255, you have to link that to some constitutional violation, right? Yes. That meaning, you know, the sufficiency of the evidence, right? Yes. But the district court said, well, you know, under Jackson, I can treat this as a motion for a new trial, which is what apparently the district court did. Correct. And you didn't object to that district court. No, even under that standard, I believe the government wins. But I don't want to concede that that's the correct standard of review. It's being attacked by the defense. They say Jackson doesn't apply. I now look at it and say, I agree. I think Collins v. Herrera v. Collins applies. And you think you can still argue it because it's a jurisdictional issue? Yes. That at least gives me something to think about. Okay. Under any standard of review, whether it's the new trial, Collins v. Herrera, whether it's Brecht, or whether it's Shulp v. Delo, which is cited by the Supreme Court in House v. Bell, which would be a standard greater than that it's more likely than not that no reasonable juror would have found the guilt of the defendant. Do we have to decide on the proper path, or is the matter non-jurisdictional, so that if we agree with you, we can say even under the most liberal standard for which the parties contend nevertheless? I think you can do it, just as Your Honor has articulated. And that's the way the Supreme Court articulated it in House v. Bell. They made the exact same. So we don't have any jurisdictional barrier that we have to surmount first because it's 2255? Correct. Given the overwhelming evidence, and I won't recite through the 500 pieces of evidence and witnesses' testimony. Sum it up in one or two sentences. Well, the significant one or two sentences, the defendant was caught red-handed October 8th in a vehicle that traveled to Portland. October 8th is what? Is that the one that's hooked to the Portland? The Portland U.S. Bank. Go ahead. The demand notes, the usurous condemning U.S. Bank, a copy to go to the spokesman to review who they previously bombed. And the U.S. Bank targeted because the way they put U.S. Bank in quotation marks because it's the United States Bank somehow. And combine that with, surprisingly here, the defendant's own testimony at trial, where he admits what they were going to do. He admits that he had grenades in each of the two stolen vehicles, that he's got a machine gun, that he's got disguises and bulletproof vests and radios and scanners. What he was going to do with all of that stuff. He said if he was going to be stopped by the police, he would have to engage them and try to disengage from them and create a scenario that he could get away. He was living under assumed names. He did not trust the government. He identified himself as a disciple of Yahweh that felt that it was his right to kill people if necessary to make them believe against abortion and against usury. So it's not only the physical evidence, but it's combined that with when he testified at the second trial, as well as his two other co-defendants testified. All the letters, the computer analysis. The blue jeans, surprisingly, match. Mr. Barbee's blue jeans match, are indistinguishable from the blue jeans of a bank robber, the lobby robber, wearing them on April 1st in the bank. The ponchos match. It's just everything matches. Thank you, counsel. Thank you. I think what I would do is just, unless there's other questions, I'll just submit it. It's dealt with in the briefs. Thank you, counsel. Thank you, Mr. Johnson. United States v. Barry is submitted.
judges: Kleinfeld, Tashima, Tallman